4-0 UNIVERSITY OF UTAH v. MAX-PLANCK All right. Mr. Gindler, you may proceed. Good morning. I'd like to discuss two issues. One is the Ex Parte Young doctrine and why it doesn't apply to this case. And one is Rule 19 and why the typical rule that a patent donor must be joined in any patent case should apply here. Ex Parte Young does not apply here for three reasons. Because Ex Parte Young requires prospective relief only sought directed against a state official to enjoin an ongoing violation of federal law. What's the ongoing violation of federal law in this case? I have absolutely no idea, Your Honor. That's one problem here. Because what they would say is, well, you're violating Section 256 by not correcting the patent. Section 256 is a savings clause. It allows you to rectify an error that happened in the past. It's not a mandatory requirement that you go out and see if there was a mistake made in the past and go and fix it. It is a way to fix a problem that occurred in the past. There's no ongoing violation of federal law. I don't know of any law that requires a patent donor to affirmatively go to the patent office and correct inventorship on a patent. There's a savings provision that allows someone to do that, but it's not an affirmative obligation. There's no violation of law by a patent donor to do that. So that's one of the three reasons why Ex Parte Young can't possibly apply here. Going in reverse order... Would a refusal to correct be a violation of law if the court ordered it? If a court ordered it, that's the second point, which is that if a court orders it, there's nothing for the patent donor to do. If the court orders it, all that happens at the University of Utah takes the order to the patent office, and the patent office corrects inventorship. There's nothing for a state official to do. So that's the second problem with applying Ex Parte Young in this case. It only deals with a situation where you get an injunction against a state official to do something to stop violating a federal law. Here, there's nothing for the state official to do. Section 256 provides, as I think the University of Utah points out, two paths to correction of inventorship. One consensual, one non-consensual. 256A is the consensual provision. You can go there on your own without anyone forcing you to do it and seek correction of a patent. 256B provides a mechanism to do it in court. If you choose the court mechanism, you don't get an order directing the patent donors to go and file something with the patent office. You get an order correcting the inventorship, and the patent office issues the certificate. Supposing we agree with you, Mr. Gimler. And supposing we agree that UMass is indispensable, and we ship this to the Supreme Court and say, deal with this. Do they have to? Well, the Supreme Court's original and exclusive jurisdiction is still discretionary, and they apply their own law in determining whether to take this case. I don't know whether they'll take the case, Your Honor. No, they don't. It's within their discretion. What happens to the case if they discretionarily decide they don't want to hear it? Then Dr. Bass will be without a remedy because she didn't do what she should have done a decade ago, which was if you think you have an invention, you know what you do? You file a patent application. So then you'll just be sitting there. And then if she had filed a patent application, and she claimed the same invention, there would have been an interference, and the matter would have been resolved. But she didn't do that. Even more than that, isn't it? I mean, you say she'll be without a remedy, but she could, if she really is entitled to be listed on the patent, have the patent invalidated also with a DJ action under 102F so that she would and no one else would then be prevented from using the technology. That would be a possibility if she were a proper party. They could take that action to try and kill off the patent. I don't know if they would be standing for that. But sure, that would be another remedy that the University of Utah or Dr. Bass could try to pursue. Seems like a pointless effort, but they could do that. What if the university was preventing her from using the technology? I don't think anyone has ever tried to do that. She's a university researcher. Universities don't tend to stop other universities from doing research. And that's not what this case is about at all. The third reason, by Ex Partium, doesn't apply in this case is because the relief that's sought, whether you characterize it as correction of inventorship or dispute over ownership, is inherently retrospective. Correction of inventorship is just a means to an end because ownership, as University of Utah acknowledges— How is that retrospective? Wouldn't the rights accrue in a prospective basis? No, actually they don't, Your Honor, because if you correct inventorship, the correction of inventorship is actually retroactive to the date the patent issued. And so that actually— Yeah, but what practical effect would that have? I'll give you an example. It changes the prior art. So, for example, under Section 102A, prior art includes things that were used or known by others. And would it change the prior art on a prospective basis for cases in the future? It would change it forever. I don't understand that argument. Maybe you need to explain it again. Sure. So, Section 102A bars a patent on an invention that was known or used by others. For example, so if Dr. Bass is replaced on the patent as an inventor or is added as an inventor, she's no longer an other. All of her prior work no longer is prior art. So it does have an effect. And there's federal circuit case law on this. That's the Panu v. Iolab case, which is cited in our papers. I guess I don't understand how that has some impact on prospective versus retrospective relief. It seems like such an ancillary, minute change in the state of things. I don't really see how that pertains. Well, the correction of inventorship corrects an error that occurred in the past. It's a remedy for an error that occurred in the past. It's not a remedy for something that's a violation of anything happening today. So you're right in the sense of it doesn't confer any new rights in and of itself except for the change in ownership, which is the primary purpose of this lawsuit. The primary purpose of this lawsuit, why this can't simply be an ancillary effect, is to change ownership. This isn't simply an altruistic endeavor to change ownership. And they expressly actually ask for that as part of the complaint, right? They ask for it in the complaint, but not just in the prayer for relief, which is talked about, where they say, well, that was just a mistake. It's talked about in the charging allegations. In fact, the charging allegations of the complaint, the last two of them before the count starts, make that absolutely clear that because there have been hundreds of millions of dollars in licensing revenues attributable to these patents, that the University of Utah wants ownership. I'll tell you exactly what the language is. It's in paragraphs 88 and paragraphs 89. They do not, at least in this complaint, though, ask for the hundreds of millions of dollars in licensing revenues, correct? They do, but in counts against Max Planck and O'Neill, but not in a count against the University of Massachusetts. But in paragraph 89, they explicitly say, I'm quoting the language from the complaint, Dr. Bass should be named as the sole inventor or an inventor, and the university should be the sole owner or an owner of these patents and patent applications that claim the three-prime overhang. That's not an ancillary effect. That's a statement as to what they're doing in this lawsuit. They're changing inventorship to change ownership. That's even more clear when you look at the other claims which do seek money from Max Planck and O'Neill, because they all rely upon the prior charging allegations. They all rely upon the allegations about correction of inventorship and change of ownership. In your brief, at one point on page seven, you say that both appeals turn on underlying questions of sovereign immunity. Yes. And that it would preclude this case from proceeding at all against any defendant in the district court. But the non-immune defendants, Whitehead and Max Planck, would still be defendants in the case, would they not? They would still be defendants in the case, but their appeal, their joint appeal, is under Rule 19, because you would have an absent patent donor. And this court has held repeatedly and universally that you cannot have a patent lawsuit without all the patent donors being involved in that lawsuit. The closest thing which the University of Utah can find to an exception is the Dynepon case. And that case involved a situation where the patent owner, which was a holding company established by the parent for the sole purpose of just holding its patents, was not subject to the jurisdiction of the court, but the parent was. And the court said, okay, in that situation where the parent has established a holding company for the sole purpose of holding its patents and got an exclusive license back and is therefore the indirect owner of the patents, that's good enough. That's the closest case you can find to any exception from the universally recognized rule that a patent owner must be a party to a patent lawsuit. And in fact, that result is mandated by Section 256 of the law. So in any case, any situation where a state university is a patent holder, either the Supreme Court hears them or they're simply – everybody in the case is simply immune. I guess it really depends upon who the plaintiff is and who the defendant is and whether there are other issues in the case. It is a result that is mandated by law. And in fact, Justice Newman pointed out that this is how it comes out in the Zchem case, which did involve an action by a private biochemical company. Wait, look, you're missing an answer here. I'm sorry. The answer you're missing is under Florida Prepaid and all of the progeny, if the state chooses to assert the patent rights, then they can be subject to suit for the patent rights, right? Isn't that the answer that you want to give? That's the answer I want to give, Your Honor. And thank you for helping me get there. Let me just finish on the one point about the Section 256. Before you go, back to Rule 19. Does Rule 19, its application, change on whether you're alleging or seeking sole inventorship versus joint inventorship? No, it applies in exactly the same way. You've got to have all the patent donors before you and an action to correct inventorship. Section 256 expressly requires it can only be done on ownership versus ownership. Well, Section 256 would only apply to a correction of inventorship action and a patent infringement case. You're talking about correction of ownership? Yes. Well, this is the way that you change ownership of a patent is you have to change inventorship if that's the basis. The only basis they have to claim ownership in this case, the only basis, is changing inventorship. That's it. And so in order to get to ownership, they've got to change inventorship. Section 256 requires notice to all parties who are concerned. You can't change inventorship without notice and opportunity to be heard. That means that UMass has to be a party to that case. What about the fact, though, that there was a joint defense agreement, that they had hired a single lawyer who was going to represent and wholesale the entire group? You know, nobody in this—don't worry about your time, okay? Don't worry about it. So there's nobody in the group who is going to have separate arguments. I mean, this isn't like an infringement case with multiple defendants where maybe your product is slightly different than his product, slightly different than his product. It just seems like one lawyer was hired to take this case forward on behalf of all of the named owners of the patent. For as long as there is not a conflict. And our anilum issue parties, as the court has read, have the ability to control the defense as long as there is not a conflict. So what happens, for example, if the court decides that Ex Parte Young is proper and the district court can go ahead? Suppose that the three parties who I now represent in the litigation, the three co-owners, say, you know what? Too much risk. We'd rather just simply make a deal with the University of Utah. We'd rather just add them to the patent. What if the University of Massachusetts disagrees? Well, now there's a conflict, and now their interests aren't aligned. Their interests are aligned only so long as the three parties who are co-owners of the patents and anilum choose to fight to the bitter end. Then their interests are aligned. But if they choose not to, you can imagine arrangements being made where, what if there was an offer, for example, that says, you know what? Why don't you name Dr. Bass as the sole inventorship? But we'll give you back your ownership interests so that you're not prejudiced in any way economically, you three owners that are still in the case. And we'll respect the anilum exclusive license so that nobody who's in the case is prejudiced, except for the University of Massachusetts, which is not the case. There's a lot of speculation. Judges at the district court level decide these indispensable party motions time and time again, and they're charged to decide them based on the facts as they exist at the time, not based on some crazy hypothetical that you come up with that maybe could possibly happen in some alternate universe. I mean, they've got to decide cases based on real facts presented to them, and there is no evidence at all in the record that any of the things you just suggested could even possibly come to pass. There's no evidence one way or the other, but that's the reason why this court has established a rule that patent owners always have to be parties in patent litigation. This is not a patent litigation. It's not patent infringement litigation. No, in fact, you've been quite clear. This litigation involves nothing else except an order to the PTO to correct something it did. That's not patent litigation. As far as you're concerned, that doesn't even involve the patent party. That's correct, but the problem is the reason for the rule to ensure that all patent donors are before the court is because the absent patent donor isn't bound by the outcome. So the university would not finally resolve all the disputes, and that was the error that the district court made, which is you don't have a final resolution of this case. Nothing would bind the University of Massachusetts. Not a party to the case at all. Well, certainly if the PTO was ordered by the court to correct inventorship, that would bind the University of Massachusetts because the result of this lawsuit is not going to be to tell the University of Massachusetts necessarily to do anything. That's correct. It's going to be to order an administrative agency. This is almost like an APA action. And then the University of Massachusetts could then challenge that order. Nothing would stop them from doing that, and then you're going to have another lawsuit about the exact same thing. Don't we have a situation here where UMass has signed all its interests and rights over to Anilam? No, only so long as a conflict of interest doesn't exist. That is, they all want to achieve the same goal. Once a conflict of interest exists, then the right to control disappears. Doesn't that give UMass this opportunity to hide behind Anilam in the minute it sees a threat to come out on its own again and declare a conflict? It allows every party the opportunity to choose its own path if that path is different. Every party has that right to choose its own path. And if they choose the same path together as they have right now in this stage of the proceedings, then Anilam gets to control the defense and can hire a defense counsel. That may not be the case tomorrow or the next day or on remand. Parties have different tolerances for litigation risk. Doesn't Anilam have complete control of the direction of the litigation? Only so long as a conflict of interest doesn't exist. Let's go back to the Supreme Court original jurisdiction. At its core, isn't this about private interest rather than sovereign power? It is about property interest, but that's exactly why Ex parte Young doesn't apply because disputes about property interests are not something which can be litigated between states in district court. Sovereign immunity applies to disputes. That was said about as clearly as I possibly can imagine in a Fifth Circuit case called Kennedy Memorial Foundation v. Morrow, where the court said, quote, A federal court does not have the power to adjudicate the state's interest in property without the state's consent. In Snap, Justice Brennan talks about the institutional interest of the Supreme Court in not being overwhelmed with cases brought under original jurisdiction. Right, and that's the result of the compact between the states. The states retained their sovereign immunity and agreed to waive it in one circumstance, which is when you sue in the Supreme Court. That is the only place where in the compact, the Constitution, which is where the Supreme Court's original jurisdiction arises from in a case like this, that's where they said we will waive it. So that was the deal the states made with each other when they ratified the Constitution in 1787. And beyond that, unless the state decides on its own to waive sovereign immunity, that sovereign immunity exists. And the rest of the deal is if the Supreme Court doesn't want to hear it, you're out of luck. Unless the Supreme Court's rules are unconstitutional. The Supreme Court has found those rules to be constitutional, and they have their own set of standards for deciding which cases to accept and which cases not to accept. I'm not aware of any precedent about fights over important intellectual property rights, whether the court's going to in this age look at that and say, you know what, those are just as important as fights about property. I don't have an answer to that, Your Honor. The Supreme Court will have to answer that. But that's their job, is to answer that question. Because district courts don't have the right to resolve property disputes between states. Only the Supreme Court has that right. But that's not the case here, is it? This is a case about property rights. It's a fight about who gets to ownership. But Utah brought suit under the EPY, the exception under EPY. It didn't bring the suit directly against the state. But EPY only applies when you seek retro, when you seek prospective relief only, directed against a state official to enjoin that official's violation, ongoing violation of a federal law. This isn't an action to enjoin an ongoing violation of federal law, and it doesn't seek prospective relief only. It seeks to change ownership. It's seeking to move an asset from one state to another. I have a broader question, which is you seem perfectly prepared and very effective at arguing your thinking on Ex parte Young. But I guess what I'm wondering is, from a bigger party platform, why are you willing to let the battle take place here in this case on Ex parte Young? Why aren't you just hanging your hat on 1251 and saying, quite frankly, Ex parte Young really just doesn't apply to cases that are state v. state, that even if we might fall squarely under Ex parte Young, that was created, as the Supreme Court has referred to it, as a legal fiction, and it was created in a small set of circumstances where there would be no jurisdiction for dispute. But here, where you have a statute that expressly creates a jurisdiction for dispute, Ex parte Young simply doesn't apply. I guess, why aren't you making that argument? That argument is made in our opening brief and our reply brief, but I only thought I had 15 minutes here today, and so I had to focus on what seemed to be the most contentious issues that were briefed by the parties, and I focused on Ex parte Young and Rule 19. But you are exactly right. This is simply a dispute between one state against another state over a property right, and this is an attempt to basically end-run that. The closest case that permits something that looks like an Ex parte Young action, that looks like it's Cahill, but Cahill is the state. You've got Supreme Court Justice Sotomayor on your side. You bet I do, and she said this is wrong. You think she'd still agree with you now that she's sitting up there looking at the Institutional Interest Report? I certainly hope that she agrees with me because I think that she would then say. But that was a dissent, right? It was a dissent, but that case, remember, involved a state suing in its representative capacity in Perron's Patria, and the court said there's a long line of cases which permits a state to sue in that capacity, acting simply as a representative of a citizen, as opposed to suing in its own interests, for example, a dispute over property. So they were seeking the exact same relief, etiquette was, in that case, as a private EPY action was, followed by the Lobstermen themselves. And the Second Circuit said it doesn't make a difference because it's the same case. It was not a case, the Cahill Court pointed out, that dealt with, for example, the proper allocation of the lobsters between Connecticut and New York. They said that case would actually be a case over property rights, and that wouldn't be an appropriate case to bring in Perron's Patria, and that wouldn't be an appropriate case for a federal district court to have. So that's the only case I'm aware of where you have a state that gets to sue officials of another state, and essentially get around the Supreme Court's original jurisdiction. So if we go the other way from Cahill, are we creating a split? If you were to decide that Ex parte Young applies in this situation, that a state can invoke it, I think it would be, to my knowledge, the first case on point that would allow one state suing as a state to evade Supreme Court's original exclusive jurisdiction simply through the opportunity of taking out the other state and replacing it with two state officials. And remember, that is exactly what happened in this case. The original complaint... I think we better hear from your other side. You've got lots of extra time, and Mr. Carlson will give you some extra time as you need it to. Thank you. I think it's at five minutes. Yeah, it started at 20. We won't hold you even to 20, because he's going to want some rebuttal time. There are two issues here. I'd like, though, to focus, at least initially, on Rule 19A. The reason for that, Your Honor, is even if you decide against us on the Ex parte Young issue, we must still decide whether the case can go forward under Rule 19A. In the absence of the state officials and the University of Massachusetts itself. And, Your Honor, here I think we have some very clear authority from the court. The Dinepon screen case versus CFMT. And that case held that an action to invalidate a patent, one that would render the property right extinct, can go forward without the patent owner. And it can go forward without the only entity that was contractually given the right to take appropriate legal action to enforce the patent. Now that case was not as narrow, I think, as counsel has said. But it went forward not with the patent owner, but with its parent corporation that owned it 100%. Exactly. But here, you want to go forward without one of the patent owners and no other representative or parent or anything that owns any portion of their undivided interest in the patent. Correct. You want to go forward with no representation for UMass. In that case, the court found the parent company was the representation for the patentee. Yes. But the court's decision didn't turn on the ownership relationship between the two entities. What the court said is that the case can go forward if the joint party has manifested its obvious concern over the maintenance of the patents in suit, shares a common goal, and shares common counsel. I mean, that's what the court said. And here, I think we have a situation where the relationship between the joint defendant, Al Nilam, and the excluded defendant, UMass, and the officials is very analogous. Because here, in their settlement agreement, they specifically reference this particular lawsuit. They say that the parties acknowledge that the University of Utah has asserted that Brenda L. Bass, PhD, may be an inventor or co-inventor in one or more claims intitutional to patent families. And then they go on to agree, nevertheless, in order to clarify responsibilities for responding to any University of Utah claim, the parties agree as follows, Al Nilam shall have sole and exclusive control over any and all responses to a University of Utah claim. Your Honor, I submit that that is no different than the parent subsidiary relationship that existed in Dynapon Screens. And so that's no basis to distinguish that case. Here, we have a much, much more compelling case for allowing the case to go forward without the UMass officials and without UMass than was presented by Dynapon Screens. Three of four co-owners are joined here. There is no patent donor in Dynapon Screens. All the joint patent donors share the same goal of defeating Dr. Bass's inventorship claim. All of the patent owners and UMass have obtained joint counsel, the same counsel. UMass is assigned sole and exclusive control over all aspects of this litigation to Al Nilam. And here's a significant difference. In Dynapon Screen, the other forum that was available was the District of Delaware, where the jurisdiction is essentially mandatory. They could have just dismissed the case and filed in the District of Delaware and could have proceeded there. With respect to sharing the same goal, what's your answer to your opponent's argument that they don't necessarily share the same goal in the event of a conflict? If a conflict comes up, then UMass has a right to step out on its own and no longer be represented by Al Nilam. I would concede that there are, conceptually, there are concepts that could conceivably arise in some unknown circumstances in which their interests would not be aligned. But those don't exist now. So the word goal within Rule 19, we're talking about a litigation goal as opposed to a strategic goal, correct? Yes. Yes. They share the same goal. And that's what the court referred to in Dynapon Screen. The court said. Strategically, UMass could decide to opt out based on a conflict of interest strategy as opposed to a litigation goal, which is to defeat the University of Utah in asserting inventorship. Yes. Yes, the University of Massachusetts could choose to do that. But here, I think, as we pointed out, the jurisdiction of the Supreme Court is discretionary. And beyond that, what the court has said is that that jurisdiction should be exercised only sparingly. That was in Mississippi versus Louisiana. And so the likelihood of us having another forum for this case is much less available than was in Dynapon Screen, setting a stronger case for us to proceed without the patent owner. And you can bet. Yeah, but you've got, I mean, Ex Parte Young, the Supreme Court has itself described as a legal fiction. And they created it for the purpose of creating a forum where none existed. States couldn't be sued otherwise given sovereign immunity. So they went with what they referred to as a legal fiction to allow certain cases to go forward. So how are you arguing that in this case where there exists a specific statute that bestows original and exclusive jurisdiction over all controversies between states in the Supreme Court that Ex Parte Young still applies? I think that when the parties and the court has talked about section 1251, everyone focuses on 1251A. And no one construes the statute as a whole. And I think before one presumes some kind of preclusive effect to 1251A, one must look at the entire statute. What the statute says under A is that there's original exclusive jurisdiction for all controversies between two or more states. But in 1251B, subsection 3, it provides original but non-exclusive jurisdiction over actions by a state against citizens of another state. This statute preserves the status quo of the law at that time, which is that if I am a state and I want to enforce some rights against another state, I have the option. I may plead a case directly against that other state, but I have to bring it in the Supreme Court under 1251A. Or I can plead a case against citizens of the other state. That is the state officials. And there I have the option. I can file in Supreme Court if I choose to, or I can proceed in district court. If you file or proceed under 1251B, do you bear the onus of showing a nexus between the individuals that were named and the law that's to be enforced? Your Honor, I would say the answer to that is yes. And the reason is that we've talked a great deal about when you pierce the pleadings to try and determine whether an action is actually against the state or whether it's against us. But the court really didn't address these individuals and establish that connection I'm talking about, did it? Right. I'm sorry, in which case? Below the district court. Oh, the district court. The district court did not address that issue specifically. It was presented to the court, but in the opinion itself, it did not address that. It is before this court as it was before the district court. To proceed under Ex parte Young,  have been brought before the court? Exactly. And I think this case is distinguishable from Pennington C because we very clearly have the right individuals. We have named Mr. McNamara, James P. McNamara. He's the individual responsible for intellectual property. But beyond that, distinguishing from Pennington C, he is the individual who was given power of attorney by the University of Massachusetts to represent its interests before the United States Patent and Trademark Office. And that is in the appendix, Your Honor. Doesn't Pennington support you in the sense that they say this is to be distinguished from the factual situation where a state official's refusal to perform a duty is itself a violation of federal law? Yes, Your Honor. I misspoke. It's ZKIM I'm distinguishing there, where ZKIM said that, well, they dismissed an Ex parte Young case because a nexus had not been established between the violation. Here, Mr. McNamara is the person who would have to sign the Certificate of Correction and submit it to the Patent and Trademark Office. The other individuals that we have... Well, that's if they do it voluntarily. I mean, if it's ordered under 256B, Mr. McNamara doesn't have to sign anything at all. We have asked the court for an injunction to order Mr. McNamara to do that. That seems very strange, right? There's 256A, which is voluntary, which is not supposed to require any court action. Then there's 256B, which is what you sued under, which requires court action, and then it's not to order Mr. McNamara to do anything at all. It's court action to order the PTO to correct the offendership. I don't see anything under 256B. It says the court may direct the PTO to... Right, it doesn't say anything about the court may direct the individual to do it voluntarily under 256A. It's certainly no longer voluntary if they're being forced to do it. Well, they're voluntarily complying with the order, I guess. Well, 256B... You're taking me aback with that. You think it's voluntary to comply with our order? No, no. Your Honor. But, yes, it's not a voluntary act at that point. It is subject to court order. That is what we ask the court to do. Yeah, but nothing in 256 gives the court the authority to order the individual to do it. 256B expressly says that it orders the PTO to correct it. The individual isn't required to participate in any way, shape, or form. So you are asking, and you have sued under 256B. So I'm trying to understand what role Mr. McNamara plays in this since he is neither invited nor able in any way to participate under the law in a 256B action vis-à-vis the correction itself. Well, Your Honor, we have asked for relief, all relief that's necessary in order to enforce the court's ruling. And to the extent that anything is necessary to be filed in the Patent and Trademark Office, we would need Mr. McNamara to be a party. We would have to compel them to do something. What? Compel them to file what? I've seen a lot of 256B actions, and I don't see that the patentee is ever involved in any way, shape, or form. So what is it that you envision Mr. McNamara is going to have to do because I just don't understand why you're suing him. So what is it that you are going to be asking him to do as part of a 256B action? Your Honor, beyond the order to file the certificate, which proceeds under A. Which proceeds under A, which you're not suing under. Beyond that, we don't have anything concrete in mind. The reason for doing that... You're suing a man when you have nothing concrete in mind that you're asking that he do. Well, no. We sued with it in mind that he would be ordered to file the certificate, Your Honor, and we don't read 256B to be preclusive of asking for that relief. It provides that the court may issue an order to the USPTO, but I don't read it to be preclusive of a court providing and also issuing, or in the alternative issuing order, to the... You're saying because of the word may? Yes. Don't you think the word may is actually in the sentence? The court before which such matter is called in question may order correction of the patent. Don't you think the word may goes to whether they're going to order correction or not order correction as opposed to may order correction or do something completely different, not spelled out in the statute? That accomplishes the same end, yes. We do. That's the way we read the statute. So whenever a statute says may, it doesn't just give the agency the authority to do what comes after rose may. It gives them the authority to do anything else at all that you come up with. The court has authority to issue an order to correct inventorship. An issue in order to the PTO to correct inventorship. Correct. I don't see how the court has authority under 256B to order Mr. McNamara to do anything at all, and that's what I'm asking you. Under what authority is Mr. McNamara going to be doing something in this case? Well, again, and I don't know how to say it any different, Your Honor, but we believe that the authority granted in 256B is not preclusive of other orders. For example, enforcing 256A, and that is what we had in mind when we joined him in the complaint. General equitable powers of a court of law and equity to enforce its own decision. Sure, Your Honor. Yes. We wanted to be prepared in case there was some additional reason to have him in the case in addition. So you're arguing that 256A is the law that's being violated? Well, Your Honor, it's the series of regulations and statutes that require that an application be in the name of the inventor. There's a continuing responsibility during prosecution under the regulations to correct inventorship should that come to the attention of the applicant. And then following issuance of patent, patent is invalid under 102F for incorrect inventorship, and there's a right for us to demand that the inventorship be corrected. If Dr. Bass was named as the sole inventor, could she then go seek an accounting? An accounting? Yeah. I don't know the answer to that, Your Honor. We have made it very clear that we do not seek that relief against the University of Massachusetts. Does it constitute a bar? Does your pleading and your positions at this point constitute a bar? I think we would definitely be precluded. We've taken that position in court. I think it's clear in the complaint that we're not seeking that against the University of Massachusetts. I know you're not now. Yeah. In the future? Are you saying in the future she would be barred from seeking an account? I think as long as we're bringing an action under Ex parte Young, yes, she's barred. I mean, she cannot plead a claim for monetary relief based on a quantification of money that has changed hands in the past. That is clearly prohibited. And so if she were to amend to do that, she would be out of court pretty fast. So, Your Honor, I think there's nothing in Section 1251 that requires the court to presume that there is no remedy under Ex parte Young remaining. I think we have pled an Ex parte Young claim. So to that extent, the UMass officials are proper parties in the case. But it's significant that even if they are dismissed, that we can still affirm the district court under an abuse of discretion standard under Dynapon's screen. Well, you've expressly asked both in the charge and in the relief sought for ownership of the stat in either sole or shared ownership. So why isn't this effectively a suit simply boiling down to a suit about ownership, if that's right? I mean, you've expressly asked for it both in your charges and in your relief sought. So why isn't this a dispute over property rights ownership? I think the trumpeting of the claim for an assignment of patents is a lot of sound and fury here. The complaint states two categories of claims. Against all defendants, it seeks correction of inventorship. And then it breaks out the non-Ex parte Young defendants. And as to those, it asserts a lot of state claims, and it asserts claims for damages. And it also asserts a claim for an assignment. Now, I will grant that in the prayer for relief, we did not make it clear that that was derived from the state claims as opposed to the claim for correction of inventorship. Because you can't, right? If you're asking for sole ownership, you're taking it from everyone. You can't assign it. The assignment clause cannot apply to our claims against University of Massachusetts officials, which are only for correction of inventorship. Once inventorship's corrected, ownership transfers by operation of law, and there's nothing for them to assign. So it's clear that it doesn't apply to that. Okay, so as you said, once inventorship is corrected, ownership transfers as a matter of law. So why isn't this just a case about property rights ownership? Because that's what you're asking for. You don't care if Ms. Bass's name is on there. You want ownership. You get ownership because her name is on there. That's all this case is about. That's where all the remuneration is at issue. That's where everything is. This isn't a case about getting credit as a co-inventor and wanting to be on some publication somewhere. This is a case about wanting to own at least a portion, if not all, of the rights of this patent. Why isn't this just a case about patent ownership? But the way we look at that... Isn't this a case about patent ownership? Well, my client wants to own the patent. That is true. But the way we analyze this issue under Ex Parte Young is we look at the relief that's requested. And ownership is part of the relief requested, is it not? No. I'm sorry, Your Honor. It's requested as to the non-Ex Parte Young defendants. As to the Ex Parte Young defendants, we've been very careful to narrowly craft our claim for relief. Except that you didn't in the claim for relief. You were very careful to narrowly do it here in court but not in the actual complaint. In the prayer, we did not make that clear. I'll grant that. We have, though, voluntarily dismissed the claims for conversion and have closed. Yes. And, Your Honor, those are the claims for which you would have an assignment. There's no other ground for an assignment in the complaint. We're asking for monetary damages, and then we have reversion and replevin, and we've asked for an assignment as to that. It's implicit, but we did not make it expressed in the prayer. So for those reasons, we request that the district court be affirmed. Thank you. Thank you, Mr. Carlson. Mr. Kindler, we'll give you your two minutes of rebuttal time. Thank you. It is impossible to construe the prayer for relief as relating only to the state law claims because you can't transfer ownership pursuant to claims that don't involve all the owners. The state law claims all of them, even the ones that were dismissed voluntarily, are asserted only against Mox Plank and O'Neillen. That involves one owner and one exclusive licensee. I do not understand the argument Mr. Carlson just made because all the owners are not parties to those causes of action and how can they be divested of ownership pursuant to those causes of action? And in fact, those causes of action don't request transfer of ownership anywhere in them. Second, this case falls within the original and exclusive jurisdiction of the U.S. Supreme Court. 1251b3 gives original but not exclusive jurisdiction when a state sues citizens of another state. But that doesn't mean that a state can do an end run around the original exclusive jurisdiction by simply suing state officers because there is line of authority from the U.S. Supreme Court that goes back well over 150 years which says that a suit against a state official acting in a state capacity is a suit against the state. You can't... Explain to me what the b3 language was meant to encapsulate. I have it here. All actions are proceeding by a state against the citizens of another state or against aliens. Was it meant to be against the citizens of another state as private citizens in their private capacity or was it, to your knowledge, meant to be as against state officials in their formal and official capacity? It's a former, Your Honor. It's rarely used in the Supreme Court. I think almost never accepts jurisdiction of those cases. It was dealt with at a time when parties were suspicious about how states would deal with the citizens of other states. It's a reason why diversity jurisdiction exists. We have a remedy in federal court that's not the province of any given state. That's why that's there. b3 wasn't a statute that was meant to formalize Ex parte Young, for example. It was not, and moreover, it would be fundamentally contrary with over 150 years of Supreme Court precedent which holds you do not get and run sovereign immunity by suing state officials acting in their state capacity because that's just simply an action against the state. The only exception is the legal fiction created by Ex parte Young. Does Rule 19 ever apply when the state is a defendant? Rule 19? Does it ever apply when the state's a party to the suit? It would just depend upon the alignment of the parties. In other words, who is suing who for what? And so it depends who's the plaintiff and who's the defendant. Does it apply in this case? Not whether it's correct, but does it apply in this case? I think what you're asking me is, is the University of Massachusetts an indispensable party to this case? And I think the answer is absolutely because they're a patent owner and every single case that I'm aware of has held in any kind of patent litigation that a patent owner has to be present. And in fact, Section 256 itself would mandate it because it requires on notice and hearing to all parties. Doesn't Rule 19 satisfy that at subsection 1 and that's to where the rights of the parties are advanced and protected in their absence? But, Your Honor, in this circumstance, a patent owner's rights can't be protected because what happens is that you could have a divestiture of their rights in that case without their presence. And that can never happen. I'm aware of no case in any context, patent law context or other property right context, where an owner of property was allowed to proceed under Rule 19 in the absence of an owner of property where the dispute was about the ownership of that property. But, of course, the state is only appearing through counsel in any case. The state is only appearing through counsel in any case. That's the same person. It's the same person as long as there's not a conflict. But I'm not there representing the University of Massachusetts in that case. I have no duty to the University of Massachusetts in that case. They're not a party. They don't have a right to be heard or to do anything in that case and they could be completely divested. The Dimepon case, which counsel referred to, the first sentence of the analysis of the Rule 19 issue was, here CFMT's interests are adequately protected by CFM, a party that owns CFMT in its entirety and therefore is in an indirect manner owner of the 761 patent itself. And that is the only case I'm aware of in which a patent owner has ever been found to not be an indispensable party in any kind of patent case. And I'm not aware of any other case in any context. Okay, I think we have your argument. Thank you. We thank both counsel. The briefs were excellent and the argument was as well. So we thank both of you. Thank you.